UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

Case Number:

MONICA THOMPKINS,

    Plaintiff,

vs.                                   **Complaint/Jury Trial Demand**

SCHOOL BOARD OF PALM BEACH
COUNTY,

    Defendant.
_____/

Plaintiff, Monica Thompkins, sues defendant, School Board of Palm Beach County, and alleges:

## Introduction

1. This is a racial discrimination/retaliation action by a black woman, Monica Thompkins, whom defendant, the School Board of Palm Beach County, employs as a secretary. She earns a lower wage now, as the secretary for the School Board's director or charter schools, than she did as the secretary for Ruth Ann Miller, a white elementary school principal, about whose behavior Ms. Thompkins complained to School Board supervisory and equal-opportunity personnel. Dr. Miller made degrading remarks about "niggers"; insisted on Ms. Thompkins's performing such domestic-servant duties as picking up her children from their private school, baby-sitting them, letting the children kick her and ordering her to run such errands as


**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

gassing up Dr. Miller's car, buying Dr. Miller Carmel Machiatos at Starbucks, and buy Dr. Miller stamps — all with Ms. Thompkins' money; punched Ms. Thompkins in the shoulder and, in a second incident, shoved her; bullied Ms. Thompkins into giving her $100 (that she never paid back); warned Ms. Thompkins that her job could be the price for non-compliance, and told Ms. Thompkins, after she learned that Ms. Thompkins had complained about her: "You fucked up — you'll be out of here before me." Ms. Thompkins sues for all available relief pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Chapter 760, FLA. STAT. ("FCRA") and the Florida Educational Equity Act, § 1000.05, FLA. STAT.

## Jurisdiction and Venue, and Parties

2.   This court has jurisdiction pursuant 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3). The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.   The court has supplemental jurisdiction to determine the state claims pursuant to 28 U.S.C. § 1367.

## Venue

3.   Venue is proper in the Southern District of Florida, West Palm Beach, pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the claims arose here and the defendant is subject to personal jurisdiction here.

## Parties

4. Plaintiff, Monica Thompkins, is protected by Title VII and the FCRA because she is black and because she engaged in protected activity under those statutes.

5. At all times material from on or about July 12, 2012, Ms. Thompkins has been employed by the School Board as a secretary, initially to Dr. Miller at Benoist Farms Elementary and, subsequent to mid-July 2013 until November 30, 2014, as a secretary to the director of the Charter School Department at a pay cut of approximately $3,000-a-year.

6. Defendant, the School Board of Palm Beach County, is and at all material times was:

    a. the legislative body responsible for operating, controlling, supervising and administering the public schools of the Palm Beach County School District, a district of the Florida State school system;

    b. an "employer" as contemplated by the Title VII and the FCRA, and

    c. "a public educational institution that receives or benefits from federal or state financial assistance," as envisioned by § 1005.2(a), FLA. STAT.

## Satisfaction of Conditions Precedent

7. Plaintiff timely filed a Charge of Discrimination with the EEOC, which by operation of law was sufficient to invoke plaintiff's rights and remedies under the FCRA.

8. The EEOC, after investigation, issued a Dismissal and Notice of Rights dated September 18, 2014, within 90 days of her receipt of which Ms. Thompkins is filing this action.

9. More than 180 days have passed since the filing of the charge without the Florida Commission on Human Relations either conciliating plaintiff's claims of race discrimination and retaliation under the FCRA or making a finding of no-cause against her, giving plaintiff the right to bring a civil action on those claims.

10. The Florida Educational Equity Act, at § 1000.05(7), authorizes a private right of action without any conditions precedent.

11. All conditions precedent to the bringing of this action have been either performed, have been waived or would be futile.

## General Allegations

12. Ms. Thompkins commenced employment with the School Board as an interim secretary to Dr. Miller in or about April 2012 and was appointed Dr. Miller's regular secretary the following school year, effective July 2, 2012.

13. Almost immediately after hiring Ms. Thompkins as her government-paid secretary, Dr. Miller launched into a racially tinged repetoire of dealing with Ms. Thompkins that over a period of several months grew into a serious or pervasive pattern of abuse:

   a. In June 2012, Dr. Miller telephoned Ms. Thompkins and told her not to go to work, but rather to come to Dr. Miller's home to

babysit her two children — which Ms. Thompkins did until 4 p.m. when Dr. Miller's mother took over;

  b. During the various times that Ms. Thompkins babysat Dr. Miller's two children, the boys would, as a game, kick Ms. Thompkins in the behind — at which Dr. Miller laughed;

  c. Beginning in July 2012 and continuing into December 2012, Dr. Miller ordered Ms. Thompkins stop on her way into work every Wednesday to pick up a large Carmel Machiatto at Starbucks for Dr. Miller — which Ms. Thompkins did with her own money, which Dr. Miller never paid her back;

  d. On or about August 21, 2012, when Ms. Thompkins showed come area-level School Board officials into a conference room without what Dr. Miller considered was proper forewarning to her of their entry, Dr. Miller waited until the others were out of sight and earshot, shoved Ms. Thompkins into a door and punched her in the shoulder, warning her never to do that again.

  e. In October 2012, when another black employee, Denisha Brown, needed a loan, Dr. Miller wrote Ms. Brown a check for $300 — and then told Ms. Thompkins: "You're going to play a part in this. You're going to write me a check for $100 and when Denisha's money comes in, I'll see that you get repaid." No repayment ever occurred.

  f. In November 2012, after assigning Ms. Thompkins to act as her intermediary in dealing with a human-resources official whom Dr. Miller considered to not be processing matters for her expeditiously enough,

Dr. Miller cautioned her: "You have to remember, Ms. T, you are a representative of me, so when you contact [the human-resources employee, don't act like a nigger, just get the job done."

    g.    Later that same month, Dr. Miller, upset because her brother had just been arrested again, walked into where Ms. Thompkins was working, and remarked: "I'm so tired of dealing with John. You know, every time John gets drunk, he acts exactly how a nigger acts."

    h.    Dr. Miller routinely — i.e., virtually every Tuesday and Thursday — ordered Ms. Thompkins to take Dr. Miller's car and go pick up her two children, Caleb and Arden, then 6 and 7, from to Rosarian Academy in West Palm Beach and take them to her home in Palm Beach Gardens.

    i.    Dr. Miller asked Ms. Thompkins December 12, 2012 to take Dr. Miller's car to a gas station during work hours and fill it up.

    j.    Dr. Miller also sent Ms. Thompkins out on School Board time to purchase stamps for Dr. Miller.

    k.    Dr. Miller shoved Ms. Thompkins again in December 2012.

    l.    December 26, 2012, Mr. Miller texted Ms. Thompkins to ask her to ask the she babysit for her foster-daughter's children.

    m.    Dr. Miller texted Ms. Thompkins January 3, 2013, to take the baby formula that was in Dr. Miller's office to Dr. Miller's foster-daughter's house in Westgate.

    14.    Dr. Miller made very clear the potential price of disobedience: "You know, you need to do what you're told. I don't like being told no. You won't have a job here."

15. Dr. Miller's treatment of Ms. Thompkins was based on Ms. Thompkins's race. Dr. Miller did not treat white employees in the same manner as she treated Ms. Thompkins.

16. Ms. Thompkins complained in December 2012 and January 2013 to Ian Salzman, the area superintendent, and to the School Board's Office of Professional Standards.

17. Mr. Salzman, the area superintendent, told Ms. Thompkins that "I don't get into that. Call our union rep."

18. Deneen Wellings, the EEO Coordinator, told Ms. Thompkins on or about April 8, 2013 that "'nigger' is not so bad," and asked her: "Do you really think that she was being racist?"

19. When Ms. Thompkins told Ms. Wellings that she was going to the EEOC, Ms. Wellings stated: "I would prefer that you do not. Let us handle it."

20. What followed Ms. Thompkins's complaints to the area superintendent, the Office of Professional Standards and the EEOC was:

    a. The imposition of micro-management over Ms. Thompkins, including such things as requiring her to ask permission to go to lunch;

    b. Dr. Millers clear message to Ms. Thompkins on the last day of school in 2013: "You fucked up. You'll be out of here before me."

    c. A one-page letter report in which Ms. Wellings deemed all of Ms. Thompkins's allegations to be "unsubstantiated."

21.   The School Board failed properly, or in good faith, to investigate plaintiff's internal complaints and failed to discipline Dr. Miller for the way in which she spoke to and treated Ms. Thompkins.

22.   Ms. Thompkins's working conditions under Dr. Miller — particularly in view of the School Board's failure to properly address Dr. Miller's behavior and Dr. Miller's implied threats to Ms. Thompkins — were such that no reasonable person would continue to work there.

23.   Following Dr. Miller's warning, Ms. Thompkins immediately intensified her search for a job elsewhere within the School Board, taking one as the secretary to the director of the Charter Schools Department, at a $3,000 pay cut.

### Count I: Title VII (Race Discrimination/Harassment)

24.   Plaintiff realleges and incorporates the allegations of ¶¶ 1-8, 11-23 above.

25.   The racially harassing conduct by Dr. Miller occurred on a relatively frequent and repetitive basis, involved physical abuse, included essentially the extortion of sums of money and was demeaning, and thus was sufficiently pervasive to negatively affect plaintiff in the terms and conditions of her employment and to unreasonably interfere with her job performance as more particularly alleged above.

26.   The conduct was of a type that a reasonable person would find offensive and Ms. Thompson found it so.

27.   The actions of the School Board in ignoring the Dr. Miller's conduct and in refusing to correct it as alleged above were intentionally and

purposefully taken in regard to Ms. Thompkins on account of her race in violation of her rights under 42 U.S.C. § 2000e-2(a).

28.  As a direct, natural, proximate and foreseeable result of defendant's actions, plaintiff has suffered emotional distress, embarrassment, inconvenience and other pecuniary and non-pecuniary damages and will continue to suffer additional losses in the future.

29.  The violation of plaintiff's federally and statutorily protected right to be free of illegal discrimination constitutes irreparable harm for which plaintiff has no adequate remedy at law entitling plaintiff to injunctive relief.

30.  Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

### Count II: Title VII  (Retaliation/Constructive Demotion)

31.  Ms. Thompkins realleges and incorporates the allegations of ¶¶ 1-8, 11-23 and 25-29 above.

32.  Ms. Thompkins's complaints to the School Board's Office of Professional Responsibility and to the EEOC and FCHR were protected activities under both Title VII and the FCRA.

33.  The School Board's ineffectual response to Ms. Thompkins's complaints, both by Dr. Saltzman and by Ms. Wellings, Dr. Miller's ensuing micro-management of Ms. Thompkins and Dr. Miller's last-day-of-school "you-fucked-up" warning, all combined into a constellation of reactions that were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

34. Ms. Thompkins's seeking the shelter of alternate, albeit lower-paying employment was a reasonable attempt by her to escape from Dr. Miller's threatened behavior.

35. The actions of the School Board in failing to remedy Ms. Thompkins's situation, and of Dr. Miller, the School Board's supervisory employee, in threatening Ms. Thompkins on account of Ms. Thompkins's protected activity violates her Ms. Thompkins's rights under 42 U.S.C. § 2000e-3(a).

### Count III: FCRA (Race Discrimination/Harassment)

36. Ms. Thompkins realleges and incorporates the allegations of ¶¶ 1-7, 9, 11-23, and 25-29 above.

37. The School Board's behavior towards Ms. Thompkins, through the behavior of Dr. Miller, was based on Ms. Thompkins's race and constituted discrimination as proscribed by § 760.10(1), FLA. STAT.

38. As the direct and proximate result of her demotion, plaintiff has suffered damages and is need of injunctive relief, as set forth in ¶¶ 28 and 29 above.

39. Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses against defendants pursuant to § 760.11(5), FLA. STAT.

### Count IV:  FCRA  (Retaliation/Constructive Demotion)

40. Plaintiff realleges and incorporates the allegations of ¶¶ 1-7, 9, 11-23, and 25-29 and 38-39 above.

41. Defendant's behavior towards plaintiff was in retaliation for her protected activity and constituted retaliation as proscribed by § 760.10(7), FLA. STAT.

## Count V: Florida Educational Equity Act

42. Plaintiff realleges and incorporates the allegations of ¶¶ 1-5, 6(c) 10-23, 25 and 29 above.

43. Defendant's behavior towards Ms. Thompkins, through the behavior of Dr. Miller, constituted discrimination based on Ms. Thompkins' race, as proscribed by § 1000.05, FLA. STAT.

44. As a result of Dr. Miller's behavior, Ms. Thompkins is being deprived of her statutory right against racial discrimination, for which there is no adequate remedy at law, entitling her to injunctive relief and attorney's fees pursuant to § 1000.05(7), FLA. STAT.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court will:

***One***, issue a declaratory judgment that the discrimination against Ms. Thompkins by the School Board was a violation of her rights under Title VII, the FCRA and the Florida Educational Equity Act;

***Two***, enjoin defendant from continuing to violate the plaintiff's federally and statutorily protected rights and to make plaintiff whole through back pay and benefits, reinstatement or, if that is not feasible as a make-whole remedy, to award plaintiff front pay;

***Three***, grant plaintiff judgment against defendant for damages for the violations of Title VII and the FCRA;

*Four*, grant plaintiff her reasonable attorneys' fees and litigation expenses against defendant; and

*Five*, provide any other relief that is appropriate.

## Plaintiff's Jury Demand

Ms. Thompkins demands trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ William R. Amlong*
WILLIAM R. AMLONG
Florida Bar Number 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar Number 275565
KAmlong@TheAmlongFirm.com
JENNIFER DALEY
Florida Bar Number 856436
JDaley@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida  33301
(954)462-1983

**Attorneys for Plaintiff,
      Monica Thompkins**